IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **ADIB EDDIE RAMEZ MAKDESSI,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**HAROLD CLARKE,** *et al.*, )<br>Defendants. )<br>)<br>) | **OPINION AND ORDER**<br>Case No. 7:22cv00428<br><br>By: Pamela Meade Sargent<br>United States Magistrate Judge |

In this prisoner civil rights action pursuant to 42 U.S.C. § 1983, as amended, the pro se prisoner plaintiff, Adib Eddie Ramez Makdessi, attempted to join together in one case more than eleven unrelated legal claims, concerning separate and unrelated events and defendants at Red Onion State Prison. By Order entered November 16, 2022, the court directed Makdessi to file a second amended complaint, raising only properly joined claims and defendants. While he has filed a document titled "second amended complaint," he continues to attempt joinder of unrelated claims against multiple defendants, in contravention of Rules 18 and 20 of the Federal Rules of Civil Procedure. Therefore, the court will sever his claims into eight separate civil actions and require him to consent to pay additional filing costs, if he intends to proceed with all claims.

Liberally construed, Makdessi's alleged claims in the present pleading are as follows:

1. On August 3, 2015, defendant S. T. White punched and kicked Makdessi while he was handcuffed in his cell, causing injuries to his back, shoulder and knee;

2. In January 2016, defendants S.T. White and Unit Manager Swiney intercepted Makdessi's mail and ripped up the lawsuit he was attempting to file about events in Claim 1. They threatened that White would assault him again if he filed another lawsuit. White, Swiney and defendant Collins placed Makdessi in a handicapped cell and then for the next seven years, threatened to remove him from that cell if he filed a lawsuit;

3. On August 20, 2020, Collins and defendant Sergeant Ridings assaulted Makdessi in his cell by pulling and twisting his shoulder and aggravating his previous back and shoulder injuries. Collins had intercepted Makdessi's outgoing lawsuit and destroyed it, and he threatened that if Makdessi filed a lawsuit, he would "f**k [him] up [and] take [him] out of handicapped cell status," (2nd Am. Compl. 5, Docket Item No. 15);

4. On October 19, 2020, Collins, Warden Kiser, and Warden White removed Makdessi from his handicapped cell to retaliate against him for a lawsuit which they had intercepted and destroyed. During the next five days, Makdessi fell and injured himself because of the lack of handicap bars to hold on to when moving around his cell. After five days, Assistant Warden Fuller moved Makdessi into a handicapped cell;

5. On July 28, 2021, defendant Major King threatened to move Makdessi out of his handicapped cell if he filed complaints or lawsuits;

6. On June 21, 2021, after learning that Makdessi was filing a lawsuit, Collins retaliated by twisting the inmate's left injured shoulder, punching his neck and shoulder, slamming him into the wall while he was in restraints, and locking him in a segregation shower for three hours. Makdessi collapsed from his injuries, but defendants Assistant Warden Blevens and D. Turner refused to call medical staff about these injuries. Although these defendants knew that Collins had searched Makdessi's cell and destroyed

a lawsuit packaged to be mailed to the court, Blevens and Turner did nothing to Collins, returned Makdessi to his handicapped cell, and advised him not to file a lawsuit to make Collins angry. Collins then threatened to take Makdessi out of handicapped cell status and have someone beat him if he filed a lawsuit;

7. On November 3, 2022, Collins discovered that Makessi had filed a lawsuit and removed him from his handicapped cell. Makdessi complained to defendants Lieutenant Massengill, Blevens, and Warden White, who said that defendants Dr. Fox and Nurse Jessee had ordered Makdessi's removal from the handicapped cell. On November 9, 2022, Makdessi fell, hit his head, and possibly fractured his left calf. Dr. Fox and Nurse Jessee refused to order X-rays and blamed Collins for removing Makdessi from his handicapped cell;

8. After a surgeon who operated on Makdessi's back in 1993 recommended medical shoes and a back brace for him, from 2017 to 2022, defendants Harold Clarke, D. Robinson, Dr. Fox, Nurse Jessee, Nurse Trent, Nurse Bledsoe, Warden White, Warden Kiser, Major King, D. Turner, Collins, and other unnamed Richmond and regional medical administrators refused to provide the shoes or brace to Makdessi. Collins said several times that they "had seen Netflix movie about [Makdessi's] crimes, and he deserves to suffer." (*Id.* at 8.); and

9. Since October 5, 2020, Dr. Fox and Nurse Jessee have denied Makdessi a cane to use when walking. They blame this decision on security staff (Warden White, Asst. Warden Blevins, and Major King) "because of the movie they seen [sic]." (*Id.*)

Makdessi asserts that all of his claims are properly joined, because they all involve incidents in which he suffered torture in prison. The court cannot agree that this characterization satisfies the joinder rules. Rather, the court finds it in the interest of justice and consistent with the federal rules to sever Makdessi's claims into eight separate lawsuits against separate sets of defendants.

II.

The second amended complaint is not consistent with Rules 18 and 20, regarding the permissible joinder of claims and parties in one federal civil action. Rule 18(a) *only* allows a plaintiff to join "as many claims as it has against an [one] opposing party" (emphasis added). On the other hand, Rule 20 allows the joinder of several parties *only* if the claims arose out of the same transaction or occurrence or series thereof *and* contain a question of fact or law common to *all* the defendants. *See* FED. R. CIV. P. 20. Thus, if the claims arise out of different transactions and do not involve all defendants, joinder of the claims in one lawsuit should not be allowed.

Under these rules, "a plaintiff may name more than one defendant in a multiple claim lawsuit only if the claims against all defendants arose out of the same incident or incidents and involve a common factual or legal question." *Green v. Denning*, 2009 WL 484457, at *2 (D. Kan. Feb. 26, 2009). These procedural rules apply with equal force to *pro se* prisoner cases. Indeed, "[r]equiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents 'the sort of morass [a multiple claim, multiple defendant] suit produce[s].'" *Green*, 2009 WL 484457, at *2 (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)).

In addition, to allow Makdessi to pay one filing fee, yet join disparate legal claims against multiple parties, concerning multiple different events and factual and legal issues, flies in the face of the letter and spirit of the Prison Litigation Reform Act, ("PLRA"). PLRA restrictions on prisoner-filed civil actions include: requiring

4

full payment of the filing fee for any civil action or appeal submitted by a prisoner — through prepayment or through partial payments withheld from the inmate's trust account; authorization of court review and summary disposition of any claim or action that is frivolous or malicious, fails to state a valid claim upon which relief can be granted or seeks relief against persons immune from such relief; and a "three strike" provision, which prevents a prisoner from proceeding without prepayment of the filing fee if the prisoner's litigation in federal court includes three or more cases dismissed as frivolous, malicious or as stating no claim for relief. *See gen.* 28 U.S.C. §§ 1915(b), (e), and (g), and 1915A. "Congress enacted PLRA with the principal purpose of deterring frivolous prisoner litigation by instituting economic costs for prisoners wishing to file civil claims." *Lyon v. Krol*, 127 F.3d 763, 764 (8th Cir. 1997). Requiring compliance with the joinder rules "prevents prisoners from 'dodging' the fee obligation and '3-strikes' provision of the PLRA." *Green*, 2009 WL 484457, at *2. To allow plaintiff to essentially package several lawsuits into one complaint would undercut the PLRA's three-strikes provision and its filing fee requirement.[1]

Where there is misjoinder of parties, the Federal Rules authorize the court, on its own initiative at any stage of the litigation, a court has the discretion to "sever any claim against a party" and proceed with it separately. Fed. R. Civ. P. 21; *Spencer, White & Prentis, Inc. of Conn. v. Pfizer, Inc.*, 498 F.2d 358, 362 (2d Cir. 1974) ("[J]ustification for severance is not confined to misjoinder of parties."). Thus, the court has inherent power to control its docket and the disposition of its

---

[1] *See also Green*, 2009 WL 484457, at *3 ("To permit plaintiff to proceed in this single action on unrelated claims against different defendants that should be litigated in separate action(s) would allow him to avoid paying the filing fees required for separate actions, and could also allow him to circumvent the three strikes provision for any new and unrelated claims that might be found to be [a] "strike" under 28 U.S.C. § 1915(g).")

5

cases with "economy of time and effort" for the court and the parties. *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992). Use of Rule 21 has been approved by circuit courts in the context of initial review of prisoner complaints, with and without misjoinder. *See Daker v. Head*, 730 F. App'x 765, 768 (11th Cir. 2018) (explaining that district court should have severed unrelated claims under Rule 21 and sua sponte dismissed improper defendants rather than dismissing prisoner's amended complaint); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) (holding that district court should have severed case into separate actions or dismissed improperly joined defendants).

As stated, Makdessi's Complaint may not proceed as it is presently constituted, because it improperly joins together multiple claims and multiple defendants that will make a joint disposition or trial unwieldy and inefficient for the parties and the court. This pleading is actually *eight* separate lawsuits bundled into one omnibus pleading. Generally stated, the pleading attempts to bring one lawsuit about excessive force and retaliatory threats in 2015 and 2016 (Claims 1 and 2); one about excessive force and retaliatory threats in August 2020 (Claim 3); one about retaliation in October 2020 (Claim 4); one about threats in July 2021 (Claim 5); one about excessive force, denial of access to courts, retaliation, and denial of medical care in June 2022 (Claim 6); one about retaliation and denial of medical care in November 2022 (Claim 7); one about denial of medical shoes and a back brace over several years (Claim 8); and one about denial of a walking cane in October 2020 (Claim 9). Accordingly, the court will sever Makdessi's second amended complaint into eight separate lawsuits. Claims 1 and 2 will remain in this case, but the second amended complaint will be docketed again in seven new and separate civil actions and one claim will be considered in each of those new lawsuits, as indicated in the docket text to be entered in each case. Each case will then be conditionally filed under a new case number, and Makdessi will receive an order requiring him to

consent to a filing fee in each case. *Any further filings about Claims 3-9 must be filed in the new case numbers in which the claim is to be considered.*

This Opinion does not address the possible merit of any of Makdessi's claims he has pled in the second amended complaint, and it does not deprive him of his right to litigate any of those claims. He simply may not litigate all of his unrelated claims against all these defendants in this single lawsuit, while being held accountable for only one filing fee. If Makdessi chooses to proceed with each of the severed claims in the new, separate lawsuits, he will be required to consent to payment of a filing fee in each lawsuit, as he has done in this case. If he does not wish to proceed with eight lawsuits, he may decline to consent to pay the filing fee for one or more of the new lawsuits and continue only with this lawsuit concerning events in 2015 and early 2016. He may also file a motion to voluntarily dismiss this lawsuit and/or one or more of the severed lawsuits without prejudice to refiling his claims at some future date, subject to the applicable period of limitations, the joinder rules, and the PLRA.

III.

In accordance with this Opinion, it is **ORDERED** as follows:

1. Claims 1 and 2 as described above are hereby **SEVERED** from the remaining claims in the second amended complaint;

2. The present case, No. 7:22cv00428, **SHALL** now include only Claims 1 and 2, concerning events in 2015 and early 2016, against the defendants listed in the description of these claims. If Makdessi does not wish to pursue these claims in a separate civil action, he may move for voluntary dismissal within 21 days from the date of the entry of this Order;

3. Claims 3 through 9 of the second amended complaint are hereby **SEVERED** into seven separate new civil actions, with one claim in each case. In each new case, the Clerk will docket (a) a copy of the second amended complaint, with a copy of this Order as an attachment, and (b) Makdessi's Prisoner Trust Account Report and Statement of Assets from this case, (Docket Items Nos. 15 and 2, respectively). In the docket text for (a) in each new case, the Clerk shall indicate which of the claims from the second amended complaint will be considered in that instant case and shall list only the defendants from that claim on the docket for that case;

4. In each of the seven new cases, the court will issue a conditional filing order requiring Makdessi (if he intends to go forward with the claim in that case) to consent to collection of an initial payment of $18.68 and, over time as funds are available, the remainder of the $350 filing fee for that case. FAILURE TO RETURN AN EXECUTED CONSENT FORM IN ANY OF THE SEVEN CASES WITHIN THE ALLOTTED TIME WILL RESULT IN DISMISSAL OF THAT CASE WITHOUT PREJUDICE;

5. By separate Order, the three motions for preliminary injunction that Makdessi has filed in Case No. 7:22cv00428, (Docket Item Nos. 9, 10, and 16) will be dismissed without prejudice, because they are not clearly related to the claims going forward in that case (all of which concern the defendants' alleged past actions); after Makdessi's underlying § 1983 claims have been severed and set up as separate cases, he may file such motions, if warranted, in the appropriate case to which they are related. He is reminded that the court cannot second-guess the medical judgments of his treatment providers, and his mere

    disagreement with doctors' decisions about appropriate treatment does not prove a constitutional violation. *Sosebee v. Murphy*, 797 F.2d 179, 181 (4th Cir. 1986); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975). Moreover, medical malpractice or negligence does not state any federal constitutional claim. *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976); and

6. All claims against G. Holloway, Robert Bivens, Sergeant Cobb, and two John Does who are mentioned only in the list of defendants and not in the description of any claim will be dismissed without prejudice by separate Order.

The Clerk will mail Makdessi a copy of this Opinion and Order.

                                         **ENTERED:**       January 23, 2023.

                                         /s/ *Pamela Meade Sargent*
                                         UNITED STATES MAGISTRATE JUDGE